## AFFIDAVIT OF MICHAEL FOX

"On ___3-22-___, 2020, I, Michael Fox, declare under 28 U.S.C. §1746 that the following material factual allegations are within my personal knowledge and are true and correct to the best of my information and belief.

I am over the age of seventy. I previously filed with this Court and the Warden on November 7, 2019, correspondence regarding compassionate release. I herein adopt those factual allegations and they are true and correct to the best of my knowledge and belief. That filing accurately describes my mental state and my prior employment history with the State of Texas law enforcement.

I previously requested compassionate release based on the federal predicates contained in my prior filing and believe that under the First Step Act and Second Chance Act, I am entitled to be placed on home confinement for the balance of my sentence.

On review of the Warden's correspondence (copy attached hereto) and consideration of the offer to settle this matter, I am willing to settle this matter by spending the remainder of my time in either halfway house or home confinement and to comply with such terms and conditions as the BOP or probation department (community supervision) may reasonably impose. My release date would be June 20, 2020. To the extent that the BOP fails to honor its representations to place me in halfway house and home confinement for the full eighteen (18) months (under the First

1

Step Act), I would ask the Court to grant compassionate release ordering my transfer to come confinement (compassionate release) for the balance of my sentence."

Further Declarant sayeth not.

3-22-20
Date

_____
Michael Fox



U.S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Complex

P.O. Box 26025
Beaumont, Texas 77720

January 31, 2020

Diana Fox
109 Mockingbird Lane
Georgetown, TX 78633

Re:   FOX, Michael
      Reg. No. 12510-480

Dear Mrs. Fox:

Thank you for your correspondence on behalf of your husband, Michael Fox, an inmate currently confined at the Federal Correctional Complex, Low Security Institution, Beaumont, Texas. Specifically, you request assistance in securing additional Residential Reentry Center (RRC) placement for your husband.

On December 21, 2018, President Trump signed into law the First Step Act of 2018 ("Act"). The Act does not state "effective immediately" and does not apply to all inmates. The Federal Bureau of Prisons is currently reviewing the new law and is preparing to implement the relevant provisions. Mr. Fox's Unit Team has reviewed his risk and needs assessment system required by the Act. After further review, your Husband will qualify for the First Step Act. His Case Manager will submit him for 12 months Halfway House Placement and 6 months of Home Confinement.

I trust this information will be helpful to you.

Sincerely,

F. J. Garrido
Warden



**wellpath**
The New CCS+CMGC.

Date of Service: 3-17-20

## Psychiatric Follow-up Evaluation

Patient Name: Fox, Michael          Date of Birth: 9-24-48
Inmate Registration Number: 12510-480   Interview Loc: FCC-  Camp  (Low)  Medium  USP

**SUBJECTIVE:** Flashbacks are back 2-3x/week. Night sweats. Feels like walls are closing in on him. 40 new inmates - they had not been conforming. Crowded. Guys next door smell. Hasn't seen wife in 3 mo. → now on lockdown due to Covid 19 & can't see her. Will go to halfway house June 20. Body tingling yesterday → possible panic attack.

**OBJECTIVE:**  BP 95/63   Pulse 60   RR 20   weight → in computer, BP stable but low
**Mental Status Exam:**
Appearance: (well-groomed)  disheveled
Mood: anxious      Affect: (congruent w/mood)
Behavior: (cooperative)  not cooperative
Speech: (Normal in RRT)  Other:
Thought Process: (linear, logical)  Other:_____  SI? N  HI? N
Presence of Psychosis: (No AVH or delusions)  or  +A
     +V_____          +paranoia/other delusions
Cognition: Above Average  (Average)  Borderline Intellectual Functioning
Insight: (Good)  Fair  Poor    Judgment: (Intact)  Fair  Poor

**ASSESSMENT:** PTSD

**PLAN:**
Medications: D/C HCTZ, ↑ Propranolol to 10mg BID. BP checks. Discussed this w/ PCP.
Labs: ∅    It's best course of action would be release to home
Follow-up: 1 mo.  confinement ASAP 2° to severe anxiety 2° to overcrowding /PTSD as well as age + risk factors regarding Covid 19

Caralyn Floyd, D.O.
Psychiatrist

FCC BEAUMONT - LOW       Wellpath
                        1283 Murfreesboro Road
                                    Suite 500
                            Nashville, TN 37217

www.wellpathcare.com



# Report Presents Bleak Analysis of BOP Medical Bureaucracy

*by Derek Gilna*

THE FEDERAL BUREAU OF PRISONS (BOP) is arguably a failed institution, and that fact is no more obvious than in the substandard medical care it provides to the prisoners in its custody. Although the BOP's bloated bureaucracy absorbs an ever-increasing percentage of the Department of Justice's financial resources, it never seems to be able to deliver even a mediocre level of medical care, and has become a magnet for prisoner tort claims and federal civil rights lawsuits. For too many prisoners with serious health needs, a stint in the BOP can turn into a death sentence.

That is the inescapable conclusion one derives from a March 2016 report on the BOP's medical system by the DOJ's Office of the Inspector General (OIG). According to the report, "recruitment of medical professionals is one of the BOP's greatest challenges and staffing shortages limit inmate access to medical care, result in an increased need to send inmates outside the institution for medical care, and contribute to increases in medical costs."

One could argue that such shortcomings are a direct result of the BOP's practice of building prisons in remote or rural areas, to save money on construction costs and salaries of staff drawn from economically-depressed communities. It should come as no surprise to the BOP that doctors and skilled medical personnel don't find positions in remote, rural prisons particularly attractive.

Staffing shortages are not the only problem with BOP medical care. Since salaries are not competitive and working conditions not ideal, it also should come as no surprise that the federal prison system does not attract the most qualified applicants. Therefore, it likewise should not be surprising that medical practitioners willing to work in federal prisons typically do not provide the highest level of competent care.

The OIG report made the following observations: The BOP's compensation and incentives offered to medical staff are insufficient to alleviate staffing shortages, the BOP does not identify or address recruiting challenges in a strategic manner, and the BOP does not use the authority it has to assign Public Health Service (PHS) officers to positions in federal prisons based on greatest need. The OIG recommended that BOP officials correct these failings, including the better use of PHS employees to address critical medical staff shortages. The report noted that "As the BOP struggles to fill its medical staffing needs, and as medical costs continue to rise, the BOP must collect better information on its priority health services vacancies and find solutions to meet the medical needs of its inmates."

However, the OIG failed to identify the primary problem facing the federal prison system, which is a systemic lack of commitment to providing adequate medical treatment to prisoners who have no other options for their healthcare needs.

Also working against the BOP is its reluctance to utilize the compassionate release process to address a steadily increasing number of extremely ill, elderly and infirm federal prisoners. Instead of releasing such prisoners to their families, the BOP allows them to remain incarcerated where they are at the mercy of a failed medical system. [See: *PLN*, Dec. 2014, p.50]. ⬛

Sources: *www.usatoday.com, https://oig.justice.gov*